IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 2-23-CR-01844 KG |
| | ) |
| **DONALD WALTER FOWLER**, | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully requests that the Court accept the parties Rule 11(c)(1)(C) plea agreement and impose a sentence of probation, impose a three-year term of probation, a term of supervised release, a $100 special penalty assessment, and all conditions of supervision contained in Attachment A of the PSR.

The United States has no objections to the Presentence Report. Doc. 31. The United States agrees that the total offense level is 14 and the criminal history category is I, resulting in a guideline imprisonment range of 15 to 21 months. *Id*. ¶65. The United States also agrees that the victim related adjustments, under USSG §3A1.1(a), §3A1.2(a)(1) and (2) apply in the above calculation. *Id*. ¶¶26-27.

I.   **STATEMENT OF FACTS**

On October 26, 2023, the FBI received information from an investigator at the Third Judicial District Attorney's Office, Dona Ana County, New Mexico, that a threatening voicemail message had been received by an employee of the District Attorney's Office. *Id.* ¶ 10. That

employee was later identified as the elected District Attorney, Gerald Byers[1]. The message was forwarded to the

Federal Bureau of Investigations (FBI), which opened an investigation into the matter.

The investigation revealed that on August 26, 2023, at 12:31 p.m, the Defendant, using his personal cell phone, called the District Attorney's Office, either dialed DA Byer's work number directly, or selected from a list of employees, and left a voice message stating:

> "Hey, you stupid nigger. I guess, ugh, cops just give you extra blow jobs when they shoot people in the back … that's why you don't charge them … for that blue line gang? You're a filthy corrupt fucking nigger. I hope you and your family get what's coming to you. And for that cop, hold shit … how is she trespassing? She has to be asked to leave. And what's with that fucking officer, fucking swearing at her every fucking five fucking seconds? You mother fucker. Your' not going to hold your officers accountable? Cause if they give you a good blow job. I guess we are going to have to. And then you can be on tv crying and whining I can't believe this happened why would people treat us this way… because you don't hold yourselves accountable you fucking dumb nigger. There should be a noose in your future.

*Id.* ¶11.

At that time Defendant placed his call, District Attorney Byers was the sole African American employed in that office. *Id.* ¶12. DA Byers was also the sole African American District Attorney in the State of New Mexico.

The Defendant's threatening message repeatedly utilized the racist and derogatory term "nigger." It also contained threats that," [Y]ou and your family get what's coming to you," and "There should be a noose in your future." The message referenced Byers' race and threatened both the victim and his family. While the law only requires that the Defendant knowingly transmit a communication containing a threat to injure another person and that the defendant consciously

---

[1] The victim's name has been publicized in both local and national media reports and platforms. As an elected official, Mr. Byers responded to media inquiries about the threat. His name is used here, with his consent.

disregarded the substantial risk that the communication would be viewed as a threat, Defendant's message also displays racial bigotry. In specifically referencing to a noose, historical and presently a symbol of the lynching of African American men, Defendant revealed racial animus in communicating his threats.

Notably, Fowler's threats coincided with the District Attorney's then pending investigation into an October 3, 2023, Las Cruces Police Department officer involved shooting by Officer Felipe Hernandez. National and local media outlets were covering the allegations that Officer Hernandez, unlawfully shot and killed a citizen, Theresa Gomez. Media outlets released lapel video wherein Officer Hernandez accused Gomez and/or her male passenger of trespassing at an apartment complex. During the encounter, lapel camera video depicts Officer Hernandez on bike patrol, confronting Gomez and her passenger. Officer Hernandez is captured cussing at Gomez. Then when Gomez attempted to drive away, Officer Hernandez fired at the vehicle, killing Gomez. At the time Defendant placed his phone call the matter was under investigation and review by law enforcement and District Attorney Byers. While charges were later brought against the Hernandez, and those charges remain pending allegations, a review of the evidence was not yet complete.

Defendant, in an apparent reaction to the media accounts, targeted Byers. The investigation reveals the Defendant called Byers from his personal cell phone and placed the call directly to Byers specific office line. In order to do so, Defendant had to research the phone number for the District
Attorney's Office in the Eighth Judicial District of New Mexico and identify Byers as the DA. Defendant identified Byers by his race, placed the call and left his threatening voice message.

Unbeknownst to Defendant, Byers was not in the office, but received the message. At the outset, neither Byers or law enforcement could know whether the call was placed locally or from a distance, and thus immediate precautions had to be taken to secure the safety of the District

Attorney and employees at the District Attorney's office. Law enforcement officers, based on the nature and content of the threat, provided a law enforcement vehicle escort to Byers as he returned home from out-of-town business. Additionally, the District Attorney's Office and its employees were evacuated/ Law enforcement officers were sent to the District Attorney's home to secure his family and to provide extra security for an extended period during the initial investigation of the threats. The

Defendant's intent to intimidate and terrorize the District Attorney, caused the District Attorney, his staff and his family to experience fear. The threat interrupted governmental business, expended law enforcement resources, and resulted in the victim and his family experiencing extreme physical and emotional stress. The District Attorney and local law enforcement enhanced safety precautions and safety procedures at the District Attorney's Office were changed and increased, and the District Attorney and his family increased safety protocols at home.

      The FBI's investigation later identified Fowler as the caller, and ultimately determined his location in Ohio and where he placed his call. Doc. 31 ¶14. Then, on November 16, 2023, the FBI interviewed Defendant. *Id.* When the Defendant was asked if he knew anything about leaving a message at the DA's office in New Mexico, Defendant responded, "Not at the DA's office." *Id.* ¶16. When asked if he left a message for someone one in New Mexico, Defendant said, maybe somebody in New Mexico. *Id.* After being confronted with information about the phone number registered to him, and associated with the call, Defendant declined to provide his phone number and stated, "I mean, redressing my government obviously isn't allowed anymore. *Id.* Defendant attempted to characterize his threatening and racially charged language as redressing government action. *Id.* ¶¶1617. Defendant went on to provide details connecting his threat as related to his viewing of news concerning police brutality. *Id.* ¶ 17

In the aftermath of Defendant's threat, the District Attorney and his family experienced extreme stress, and related medical conditions similar to the reactions service men experience, when every potential encounter may present real danger.

## II.   PROCEDURAL HISTORY

On December 19, 2023, an Indictment was filed charging Defendant with Interstate Threats, in violation of 18 U.S.C § 875. *Id.* ¶1. On June 17, 2024, Defendant pled guilty to the oncount Indictment and the parties entered into a Rule 11(c)(1)(C) agreement. *Id.* ¶2.

## III.   DEFENDANT'S PERSONAL CHARACTERISTICS

### A.   Personal and Family Information

Defendant reports that he and his family have a good relationship. *Id.* At the age of 2, Defendant and his 4-year-old brother were adopted by Ken and Joan Fowler. *Id.* ¶53. He moved out of his family home at age 18, married twice, and fathered 3 children. *Id.* ¶¶52-55. He is currently divorced. *Id.* ¶¶ 54-55. Defendant's third child is age 16 and resides with Defendant. *Id.* ¶54.

### B.   Physical Condition

Defendant reports that he is in good health with no chronic illnesses or medical conditions. *Id.* ¶56.

### C.   Mental Health History

Defendant reports that his is mentally and emotionally health, with no history of mental or emotional issues. *Id.* ¶ 57.

### D.   Substance Abuse History

Defendant, on the advice of counsel, did not provide information concerning any history of substance use. *Id.* ¶58. However, his arrest history reflects an Open Container conviction at the age

of 20 and a conviction for Operating a Motor Vehicle While Intoxicated at 24. *Id.* Defendant is now 47 years old. Doc. 31.

### E. Education

Defendant completed his GED in approximately 1997. *Id.* ¶ 59. Defendant reported having a lead abatement license, which is expired. *Id.* He reports having no other vocational training or specialized skills. *Id.*

### F. Employment

Defendant is self-employed operating a residential and commercial maintenance company. *Id.* ¶60. He has pursued that line of work for the past 30 year. *Id.* His income varies, depending on the availability at scope of work. *Id.*

### G. Criminal History

Defendant has limited criminal history. His last encounter with law enforcement, prior to the current offense, occurred when he was 24 years old. *Id.* ¶40. In 2001, he was convicted of Operating a Motor Vehicle While Intoxicated. *Id.* Prior to that, between the ages of 20 and 23 years old, Defendant had been convicted of having an open container in a motor vehicle, disorderly conduct (two separate counts), and theft. *Id.* ¶¶ 37-39, 45.

## IV. ARGUMENT

The United States recommends that the Court accept the party's plea agreement and sentence the Defendant to a three-year term of probation, a term of supervised release, a $100 special penalty assessment, and all conditions of supervision contained in Attachment A of the PSR. When the threatening call was received, the victim and law enforcement could not immediately determine the location of the caller, his identity, his true intentions, or his ability to carry out his threat. As a result, immediate actions were taken to secure the safety of District Attorney, his staff, and his family. Defendant, however, could have easily anticipated the impact of

his threats. The repeated use of racial slurs and reference to a noose, and the context of the call, demonstrate Defendant's knowledge that the District Attorney was African American. The Defendant's racial animus behind the call, is not something easily addressed through our legal system.

However, in balancing the sentencing considerations before this Court, the United States notes that Defendant has limited criminal history, no known physical or mental health issues, has been self-employed for many years, and is currently raising his 16-year-old son. As such, the United States requests that the Court accept the plea agreement and sentence consistent with the agreement.

## V.    CONCLUSION

A sentence of probation, with a term of supervised release months and one day is sufficient, just, and reasonable, but not greater than necessary to comply with the sentencing considerations outlined in 18 U.S.C. § 3553(a)(2) and the factors addressed in *United States v. Booker*, 543 U.S. 220 (2005). The seriousness of this offense requires a firm punishment which enforces respect for the law but is not greater than necessary.

THEREFORE, the United States respectfully asks that the Court accept the plea agreement, which is pursuant to Rule 11(c)(1)(C). The United States recommends a 3-year term of probation, a term of supervised release, to include each of the recommendations set forth in Attachment A of the Presentence Report, and a $100 mandatory special penalty assessment and restitution.

Respectfully submitted,

ALEXANDER M. UBALLEZ
United States Attorney

*/s/ Niki Tapia-Brito*

                              NIKI TAPIA-BRITO
                              Assistant United States Attorneys
                              201 3rd Street NW, Suite 900
                              Albuquerque, New Mexico 87102 (505) 346-7274

I HEREBY CERTIFY this 7th day of October, 2024, that a copy of this document was filed electronically through the Court's CM/ECF system, which is designed to serve copies of this document to counsel of record.

*/s/*
NIKI TAPIA-BRITO
Assistant United States Attorney